**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG**

**HARRY GINGOLD,**

　　　　　　**Plaintiff**,

**v.**

**WEST VIRGINIA UNIVERSITY
BOARD OF GOVERNORS, E. GORDON
GEE, MARYANNE REED, GREGORY
DUNAWAY, and EARL SCIME,**

　　　　　　**Defendants**.

**CIVIL ACTION NO.: 1:23-CV-91
(JUDGE KLEEH)**

## REPORT & RECOMMENDATION, RECOMMENDING DEFENDANTS' MOTION TO DISMISS [ECF NO. 15] BE GRANTED AND THAT PLAINTIFF'S CLAIMS BE DISMISSED

On November 13, 2023, *pro se* Plaintiff Harry Gingold ("Plaintiff") filed a Complaint against Defendants West Virginia University Board of Governors, E. Gordon Gee, Maryanne Reed, Gregory Dunaway, and Earl Scime ("Defendants"). [ECF No. 1]. On November 20, 2023, Plaintiff filed an Amended Complaint against Defendants. [ECF No. 8]. In the Amended Complaint, Plaintiff brings five claims as follows: (1) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (2) retaliation in violation of the ADEA, Title VI, and/or Title VII of the Civil Rights Act; (3) violations of due process under 42 U.S.C. § 1983; (4) breach of contract and/or breach of the implied covenant of good faith and fair dealing; and (5) hostile work environment.

On November 13, 2023, this Court, by the Honorable Thomas S. Kleeh, Chief U.S. District Judge, entered an Order of Referral, referring this action to the undersigned U.S. Magistrate Judge in order to conduct a scheduling conference and issue a scheduling order, for written orders or

1

reports and recommendations, as the case may be, regarding any motions filed, and to dispose of any other matters that may arise. [ECF No. 5].

Presently pending before the Court is Defendants' Motion to Dismiss [ECF No. 15] and Memorandum in Support [ECF No. 16], thereof. The Court also is in receipt of Plaintiff's opposition [ECF No. 20] to the motion (which the undersigned construes as a response), Defendants' reply [ECF No. 21] in support of the motion, and Plaintiff's brief [ECF No. 24] in response to the reply (which the undersigned construes as a surresponse). Upon consideration of the filings, and for the reasons stated herein, the undersigned now **RECOMMENDS** that Defendants' Motion to Dismiss [ECF No. 15] be **GRANTED**, and that the claims be **DISMISSED**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### a.  Factual Background

Plaintiff is a tenured mathematics professor in the School of Mathematics and Data Sciences ("SMDS") at West Virginia University ("WVU"). Plaintiff is a 78-year-old who has been teaching at WVU since August 16, 1981. Defendants include the West Virginia University Board of Governors ("WVUBOG"); Gordon E. Gee, the President of WVU; Maryanne Reed, the Provost and Vice President for Academic Affairs at WVU; Earl Scime, the Director of the School of Mathematics and Data Science ("SMDS") at WVU from 2019 to 2023; and Gregory Dunaway, Dean of the Eberly College of Arts and Sciences at WVU.

### b. Letter of Reprimand and Teaching Evaluation

On July 1, 2021, Defendant Scime sent a letter to Plaintiff about the decision to put a letter of reprimand in his personnel file. On January 18, 2022, and unbeknownst to Plaintiff, Plaintiff received a performance evaluation for 2021 in which his teaching was rated as "unsatisfactory."

After Plaintiff appealed both decisions to Defendant Dunaway, Plaintiff's reprimand was upheld, but the teaching evaluation was upgraded to "satisfactory." Plaintiff claims that the performance rating impacted his eligibility for an increase in merit pay increase and was conducted in violation of WVUBOG's rules and regulations.

### c. Distinguished Professorship Award

The Eberly College of Arts and Sciences sought applications from faculty members within the SMDS for a distinguished professorship award. Of the five qualifications required, two are relevant: a letter of availability from the applicant's unit chair (Defendant Scime is Plaintiff's unit chair) and experience in mentoring graduate students. Plaintiff requested that Defendant Scime write a letter for Plaintiff's application. Plaintiff alleges that Defendant Scime required additional qualifications that were not within the criteria set for the award. Plaintiff notified Defendant Dunaway that Scime had asked additional questions. Nonetheless, Defendant Scime submitted the letter on behalf of Plaintiff. Plaintiff, however, alleges that the letter did not discuss Plaintiff's experience in mentoring graduate students, one of the five criteria considered in the selection process. On February 20, 2023, Plaintiff submitted his application for the award. Plaintiff alleges the faculty member who ultimately was selected was a younger candidate.

### d. Sabbatical Application

On April 13, 2023, Plaintiff applied for a sabbatical for the Spring 2024 semester. At some point, Plaintiff alleges that he was made aware that the WVUBOG did not plan to permit him to take a sabbatical. Before receiving a decision from the Dean's Office, Plaintiff filed a complaint with the Equal Opportunity Commission ("EEOC") on May 25, 2023 alleging age discrimination regarding his sabbatical application. The Dean's Office suggested that Plaintiff submit a modified

sabbatical application, which Plaintiff alleges he did on July 25, 2023. This application was approved on August 21, 2023.

### e. Increased Course Load

On May 3, 2023, Plaintiff alleges that Defendant Scime notified Plaintiff and other faculty members that their semester teaching loads would increase from two classes to three classes. Plaintiff alleges has never taught more than two classes per semester in his academic career. Plaintiff filed a grievance with the West Virginia Public Employees Grievance Board ("WVPEGB") on May 14, 2023, alleging discrimination, favoritism, reprisal, and retaliation. Plaintiff additionally added his claims as part of the above-noted EEOC complaint. On June 5, 2023, the WVPEGB and Plaintiff met in a conference where Plaintiff informed the WVPEGB that he would be advising a PhD student during the Fall semester. The WVUBOG verified this arrangement and returned Plaintiff's course load to two classes. On July 21, 2023, the grievance was dismissed.

On October 4, 2023, the EEOC issued a Right to Sue notice. Thus, Plaintiff brought this action.

## II.   LEGAL STANDARDS

To state a claim for relief, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement serves to give "the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). Detailed factual allegations are not required. Twombly, 550 U.S., at 555. The factual allegations

simply must be "enough to raise a right to relief above the speculative level." Id. The "sheer possibility that a defendant has acted unlawfully" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Facial plausibility is established when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)," so long as "all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)).

"When rendering its decision, [a] court should consider only the allegations contained in the complaint, the exhibits to the complaint, matters of public record, and other similar materials that are subject to judicial notice." Conklin v. Jefferson Cty. Bd. of Educ., 205 F. Supp. 3d 797, 803 (N.D.W. Va. 2016) (citing Anheuser–Busch, Inc. v. Schmoke, 63 F.3d 1305, 1312 (4th Cir.1995)). A district court should grant a motion to dismiss where the complaint is insufficient to state a claim to relief. Finally, "[a] district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice. That determination is within the

district court's discretion." Carter v. Norfolk Cmty. Hosp. Ass'n, 761 F.2d 970, 974 (4th Cir. 1985);

see also Cameron v. MTD Prod., Inc., No. CIV.A.5:03 CV 75, 2004 WL 3256003, at *3 (N.D.W.

Va. Jan. 7, 2004), aff'd, 90 F. App'x 53 (4th Cir. 2004).

Relatedly, the undersigned of course is mindful of Plaintiff's *pro se* status in this context.

Because Plaintiff is proceeding *pro se*, the Court must liberally construe the pleadings. Estelle v.

Gamble, 429 U.S. 97, 106 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir. 1978). A *pro

se* complaint is subject to dismissal, however, if the Court cannot reasonably read the pleadings to

state a valid claim on which a plaintiff could prevail. Barnett v. Hargett, 174 F.3d 1128, 1133 (10th

Cir. 1999). A court may not construct the plaintiff's legal arguments for him, nor should it "conjure

up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th

Cir. 1985).

### III.   ANALYSIS

As summarized above, Plaintiff has alleged claims on the basis of the following: (1) age

discrimination relating to the Distinguished Professorship award; (2) age discrimination relating

to a sabbatical award; (3) age discrimination and retaliation related to Plaintiff's increased course

load; (4) violation of Due Process rights in the issuance of a reprimand letter; and (5) violation of

Due Process rights for an "unsatisfactory" performance review. For the reasons outlined below,

the undersigned **RECOMMENDS** that Plaintiff's claims on these bases be **DISMISSED** in their

entirety.

**a.   WVUBOG and individual Defendants are entitled to sovereign immunity.**

Defendants argue that, as arms of the State of West Virginia, WVUBOG and the individual

defendants are entitled to sovereign immunity protection from Plaintiff's claims of age

discrimination under the ADEA, violations of due process pursuant to Section 1983, and a breach

of contract and/or breach of implied covenant of good faith and fair dealing under West Virginia common law. The Eleventh Amendment of the United States Constitution protects a State from "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI, § 1. The Supreme Court has established that such protection is not limited to suits by citizens of other states but "suits brought in federal courts by her own citizens as well." Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (2009) (quotation and citation omitted).

Eleventh Amendment sovereign immunity extends to state agencies, officials, and other "arms of the State." W. Va. Univ. Bd. of Governors ex rel. W. Va. Univ. v. Rodriguez, 543 F. Supp. 2d 526, 529-30 (N.D.W. Va. 2008). As for the institutional Defendant, the WVUBOG is an arm and alter ego of the state, and thus entitled to the protections of the Eleventh Amendment. Id., at 535 (citing cases); Univ. of W. Va. Bd. of Trustees ex rel. W. Va. Univ. v. Graf, 205 W. Va. 118, 119, 516 S.E.2d 741, 742 (1998).

What is more, a state official when acting in their official capacity is immune "[j]ust as the State is immune from suits brought under § 1983." Zimmeck v. Marshall Univ. Bd. of Governors, 2013 U.S. Dist. LEXIS 149979, at *17 (S.D.W. Va Oct. 18, 2013) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Plaintiff has not made any allegation of any individual Defendants acting in a non-official capacity. By Plaintiff's own pleading, each action of which Plaintiff complains was taken by an individual Defendant in their capacity as a member of the administration of WVU. Thus, the individual Defendants enjoy sovereign immunity, as well.

That is not the end of the inquiry, however. There are three exceptions to sovereign immunity, none of which apply to Plaintiff's claims. First, the State may waive its right to immunity and consent to suit. Lapides v. Bd. of Regents Univ. Sys. Of Ga., 535 U.S. 613, 618

(2002). A state may waive its immunity only "(1) directly by statutory or constitutional provision" or "(2) 'constructively,' by voluntarily participating in a federal program when Congress has expressly conditioned state participation in that program on the state's consent to suit in federal court." Westinghouse Elec. Corp. v. W. Va. Dep't of Highways, 845 F.2d. 468, 470 (4th Cir. 1988). A statutory or constitutional waiver requires an "unequivocal" statement of the state's intention to subject itself to federal court. Id. The ADEA and Section 1983 are both federal statutes that contain no unequivocal statement of intent for the state of West Virginia or its arms to subject itself to suit in federal court. The West Virginia Constitution additionally provides that "West Virginia shall never be made defendant in any court of law or equity . . ." W.Va. Const. art. VI, Sec. 35.

Here, nothing adduced shows that WVUBOG and the individual Defendants have waived their right to immunity. Therefore, in the absence of a statement of the State's intention to waive immunity under any of the three claims asserted by Plaintiff, the first exception does not apply to aid Plaintiff.

A second exception exists if "Congress [] abrogate[s] the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" Bd. of Trs. of Univ. of Ala. V. Garrett, 531 U.S. 356, 363 (2001) (quotation omitted). Nothing herein shows that Congress has done so with the ADEA, Section 1983, or for breach of contract and/or breach of good faith and fair dealing under state common law. Thus, the second exception here does not operate to salvage Plaintiff's claims.

Thirdly, a suit against a State is permitted when the plaintiff is seeking "prospective injunctive relief against state officials acting in violation of federal law." Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004) (citation omitted). Here, Plaintiff is not seeking any

prospective injunctive relief, but rather damages. Therefore, the third exception does not apply to aid Plaintiff.

Because no exceptions to the sovereign immunity exercised by the WVUBOG or the individual Defendants apply, the undersigned **RECOMMENDS** that the claims for age discrimination under the ADEA, violations of due process pursuant to Section 1983, and a breach of contract and/or breach of implied covenant of good faith and fair dealing be **DISMISSED**.

### b. Plaintiff failed to state a retaliation claim for which relief can be granted.

Defendants argue that Plaintiff has failed to adequately assert facts necessary to state claims under the ADEA or Title VII.[1] Both laws prohibit employers from retaliating against an employee for opposing an unlawful practice under either law or participating in a proceeding or litigation under either law. 29 U.S.C. § 623(d); 42 U.S.C. § 2000e-3(a). However, each law "protect[s] against discrimination based on different characteristics and have distinct anti-retaliation provisions." Faulconer v. Centra Health, Inc., 808 F. App'x 148, 151 (4th Cir. 2020). The ADEA covers discrimination based on age and retaliation for objecting to age discrimination. Id., at 153; 29 U.S.C. § 623(d). Title VII prohibits retaliation only against individuals who oppose "discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000-e2, 2000-e3.

To state a claim for retaliation under either the ADEA or Title VII, Plaintiff must show (1) that he engaged in a protected activity, (2) that the employer took an adverse action against him and (3) that there was a causal link between the protected activity and the adverse action. Laurent-

---

[1] Plaintiff's Amended Complaint alleges unlawful action due to age under Title VI. Title VI governs discrimination and retaliation claims based on "race, color, or national origin." 42 U.S.C. § 2000d. Thus, Title VI does not seem to have any application here. Rather, it appears that Plaintiff intended to pursue claims under Title VII, and Defendants and the undersigned construe the claims as such in light of Plaintiff's *pro se* status.

Workman v. Wormuth, 54 F.4th 201, 212 (4th Cir. 2022) (Title VII) (citation omitted); Ullrich v. CEXEC, Inc., 709 F. App'x 750, 753 (4th Cir. 2017) (ADEA).

Here, Plaintiff alleges retaliation occurred in the context of two different developments: (1) his sabbatical award and (2) his increased course load. Plaintiff purportedly engaged in protected activity by filing his WVPEGB grievance on May 14, 2023 and EEOC charge on May 25, 2023. As such actions would trigger only ADEA protection, the undersigned **RECOMMENDS** that Plaintiff's retaliation claim be **DISMISSED** to the extent asserted under Title VII. See Faulconer, 808 F. App'x at 153.

With regard to Plaintiff's ADEA claim, Plaintiff fails to assert what actions Defendants took to retaliate against him. Plaintiff makes conclusory assertions that Defendants "retaliated" against him, but fails to assert what actions the retaliation is for. [ECF No. 8, at 110, 118, 127]. In fact, to the contrary, all indications in the record are that Defendants were conciliatory rather than retaliatory after Plaintiff elevated matters.  When Plaintiff filed his EEOC claim after unofficially learning that WVBOG had no intent of allowing him to take a sabbatical, Defendants gave Plaintiff another opportunity to apply and allowed Plaintiff to submit a modified application.  Thus, nothing about Defendants' actions appears to have been retaliatory.

With regard to the administrative decision to increase Plaintiff's course load, Defendants contend that Plaintiff and two other faculty members were informed their course load would increase by one course because they did not advise a PhD student during the fall semester. [ECF No. 16, at 3]. The decision was made *before* Plaintiff's grievance claim was filed on May 14, 2023 for alleged discrimination, favoritism, reprisal, and retaliation. [ECF No. 8-5, at 13]. The grievance claim was filed only after Plaintiff's course load was increased. While Plaintiff asserts that such a decision was retaliatory, he again fails to provide sufficient facts to support his claims.

Speculations asserted as, and unsupported by, facts do not lend themselves to legal conclusions. Ashcroft v. Iqbal, 556 U.S., at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiff also alleges that the decision was part of retaliation for disputing a 2021 reprimand letter. [ECF No. 20, at 10-11]. However, nothing in the record shows that this instance was related to either the EEOC complaint or the WVPEGB grievance, as it occurred more than one year before the protected activity.

For each purported retaliatory action, Plaintiff fails to show how these actions are in fact retaliation for protected activities that occurred after the fact. For this reason, the undersigned **RECOMMENDS** the retaliation claim be **DISMISSED**.

### c. Plaintiff fails to state a claim of hostile work environment for which relief can be granted.

Plaintiff alleges that Defendants created a hostile work environment through discrete acts of discrimination and retaliation. He specifically alleges that a hostile work environment period existed from July 1, 2021 to August 1, 2023. He alleges that the actions which created this hostile work environment period consist of: (1) process for Distinguished Professorship; (2) sabbatical award process; (3) teaching load changes; (4) 2021 letter of reprimand; and (5) an unsatisfactory rating of his teacher performance. Defendants argue that the claim asserted is an impermissible "amalgamation" of an alleged claim for a hostile work environment and a claim for disparate treatment. [ECF No. 16, at 12].

To this end, Defendants correctly argue that the frameworks for analyzing the two actions are different and thus cannot be conflated. See Robinson v. Priority Auto. Huntersville, Inc., 79 F.4th 776, 781, 783 (4th Cir. 2023) (providing the frameworks for hostile work environment and disparate treatment). "The differing analytical standards governing each theory of [] discrimination

mean that allegations sufficient to establish one claim, e.g. disparate treatment, do not necessarily support an action based on another claim, e.g. hostile work environment." Desouza v. Office of Children & Family Services, No. 18-CV-2463, 2019 WL 2477796, at *4 (E.D.N.Y. June 12, 2019); see also Wade v. District of Columbia, 780 F.Supp. 2d 1, 19 (D.D.C. 2011) (rejecting plaintiff's effort to transform the amalgamation of disparate treatment claims into cause of action for hostile work environment); Lester v. Natsios, 290 F.Supp. 2d 11, 33 (D.D.C. 2003) ("Discrete acts constituting discrimination or retaliation claims…are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult.").

In addition, Plaintiff did not properly assert a hostile work environment claim because he failed to exhaust administrative remedies. To file a Title VII action, a plaintiff must first exhaust any available administrative remedies. Lewis v. City of Chicago., Ill., 560 U.S. 205, 210 (2010); 42 U.S.C. § 2000e-5(e)(1). In addition to the sabbatical award and the course load issues, Plaintiff has asserted three issues in the Amended Complaint that were not included in his EEOC charge: (1) the Distinguished Professorship application; (2) the letter of reprimand; and (3) the unsatisfactory rating in a performance evaluation. Furthermore, Plaintiff failed to assert any long-term harassment or mistreatment in his EEOC charge.  Failure to assert a claim in an administrative complaint places such claims outside the analytical realm of this suit. Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 133 (4th Cir. 2002). Thus, the hostile work environment claim fails, and the undersigned **RECOMMENDS** the hostile work environment claim be **DISMISSED**.

### d.  Plaintiff fails to state a claim for breach of contract for which relief can be granted.

Plaintiff fails to properly assert facts that Defendants breached a contract or breached their duty of good faith and fair dealing. To sufficiently plead a breach of contract claim, Plaintiff must

adduce facts that show "(1) a contract exists between the parties; (2) a defendant failed to comply with a term in the contract; and (3) damage arose from the breach." Nance v. Huntington W. Va. Hous. Auth., 2017 W. Va. LEXIS 345, at *13 (W. Va. May 19, 2017) (citing Wittenberg v. Wells Fargo Bank, N.A., 852 F. Supp 2d 731, 749 (N.D.W. Va. 2012)).

Plaintiff has not alleged that a contract exists between him and any named Defendant. Plaintiff points to Rule 4.2 of the WVU Board of Governors Rules. However, Plaintiff misinterprets the nature of this document as a contract between Plaintiff and WVUBOG. The referenced document is a code of rules that governs the operation of the WVUBOG. Additionally, even if the rules constituted a contract, Plaintiff has not adequately established that the WVUBOG or the individual Defendants are parties to it. Furthermore, Defendant rightfully contends that Plaintiff fails to state the terms to which Defendant failed to comply with in the alleged contract. Plaintiff simply states that "WVBOG and Defendants violated WVU guidelines[,] rules[, and] regulations in a breach of contract. The breach of contract was material." [ECF No. 20, at 6-8].

If there is no contract, there of course is no breach of contract claim that can be analyzed. If there is no breach of contract, it is also true that, as a matter of law, there cannot be a breach of the implied covenant of good faith and fair dealing. Moreover, Defendants correctly state that West Virginia does not recognize a stand-alone legal claim for breach of the implied covenant of good faith and fair dealing. See Hanlon v. AXA Equitable Life Ins. Co., 2016 W. Va. LEXIS 341, at *7-8 (W. Va. May 20, 2016 (noting the Supreme Court of Appeals has repeatedly "declined to recognize an independent claim for a breach of the common law duty of good faith . . . .") (quoting Doyle v. Fleetwood Homes of Va., Inc., 650 F. Supp 2d 535, 541 (S.D.W. Va. 2009)).

Accordingly, because no contract exists between Plaintiff and Defendants, the undersigned **RECOMMENDS** that the breach of contract claim be **DISMISSED**.

**e. Individual Defendants are entitled to qualified immunity.**

Plaintiff has failed to establish any constitutional or statutory rights that Defendants have violated that would suspend their qualified immunity. "Qualified immunity may be invoked by a government official sued in his personal, or individual, capacity." Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006). Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citation and quotation omitted); West v. Murphy, 771 F.3d 209, 213 (4th Cir. 2014). A defendant is entitled to qualified immunity in an individual capacity if (1) "the facts 'make out a violation of a constitutional right' and (2) whether that right was 'clearly established' at the time of the defendant's alleged misconduct." Sheppard v. Visitors of Virginia State University, 993 F.3d 230, 238 (citing Pearson, 555 U.S. at 232). When a government official's actions do not violate a clearly established statutory or constitutional right, they are entitled to qualified immunity unless the actions are "fraudulent, malicious, or otherwise oppressive." Kelly v. W. Va. Reg'l Jail & Corr. Facility Authority, 2019 U.S. Dist. LEXIS 110517, at *4 (W. Va. S.D.W. Va. July 2, 2019) (citing W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B., 234 W. Va. 492, 503 (2014).

A statutory or constitutional right is "clearly established" when the defendant has "fair notice that her conduct was unlawful." Brosseau v. Haugen, 543 U.S. 194, 198 (2004). The defendant's conduct "is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." Id. "Whether an asserted federal right was clearly established at a particular time, so that a public

official who allegedly violated the right has no qualified immunity from suit, presents a question of law, not one of 'legal facts.'" Elder v. Holloway, 510 U.S 510, 516 (1994).

Here, by the Amended Complaint, Plaintiff alleges that his procedural due process rights were violated by having a reprimand placed in his file without a hearing, which resulted in Plaintiff's ineligibility for a merit pay increase. To be sure, under the Due Process Clause of the Fourteenth Amendment, state officials may not "deprive any person of . . . property, without due process of law." U.S. Const. Amend. XIV. In order to establish a property interest in a benefit, the plaintiff "must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). Property interests are created "from an independent source such as state law." Id. A claim to a benefit can only be established by express language in a contract or statute.

Plaintiff has failed to identify how Defendants purportedly violated his due process rights in the matter regarding the alleged letter of reprimand. Plaintiff states that his due process rights were violated when Defendants did not communicate with Plaintiff before making the decision to reprimand him. [ECF No. 8, at 10]. Plaintiff misreads Sam Nadler, Jr. v. West Virginia University, No. 05-HE-455, 2006 WL 1976851 (June 22, 2006) as providing a source of property interest when it merely finds that an employee must be given notice and opportunity to be heard prior to disciplinary action. Plaintiff alleges he was denied this notice and opportunity but has not shown this as so.

Plaintiff had the public employee grievance procedure available to him. W. Va. Code §§ 6C-2-1, et seq. An aggrieved public employee can challenge an adverse employment action to seek a variety of relief. W. Va. Code § 6C-2-3; Wei-Ping Zeng v. Marshall Univ., No. 3:17-CV-3008,

2020 WL 3068095, at *11 (S.D.W. Va. Jan. 28, 2020). Plaintiff states that Defendant Scime notified Plaintiff of the upcoming decision on July 1, 2021. Before the letter was placed in Plaintiff's file, Plaintiff received the opportunity to appeal to Defendant Dunaway about the letter. Additionally, Plaintiff exercised his right to file a public grievance and be heard concerning the alleged violations. At bottom, Plaintiff was given notice and an opportunity to respond to the reprimand as required and utilized procedures to do so.

Additionally, with respect to any ineligibility for a merit pay increase, Plaintiff has not identified any employment contract or statutory rule or regulation entitling him to such merit pay. When merit pay is based on meeting certain criteria, other courts have found that it is not a concrete property interest actionable under the Due Process Clause. See Veit v. Heckler, 746 F.2d 508, 511 (9th Cir. 1984); Swartz v. Scruton, 964 F.2d 607, 610 (7th Cir. 1992).

Finally, Plaintiff has not asserted any actions that were "willful" or "malicious" aside from conclusory, unsupported allegations. Plaintiff has also failed to allege an action that clearly violates a statutory or constitutional right, Thus, there is no sufficient basis for suspending the qualified immunity of the individual Defendants.

Because the individual Defendants are entitled to qualified immunity, the undersigned **RECOMMENDS** that claims with respect to the individual Defendants be **DISMISSED**.

### f. The Amended Complaint fails to allege facts to satisfy Twombly standard.

#### 1. Individual Defendants

By the Amended Complaint, Plaintiff asserts five counts against all four individual defendants, but has not put forth the factual allegations necessary to establish liability as to any of the four individual defendants. While Plaintiff identifies each individual defendant as an employee of WVU, [ECF No. 8, at 3], the factual allegations are insufficient to support the claims lodged.

More particularly, Plaintiff misunderstands how vicarious liability is established and must be alleged. Vicarious liability cannot be used, on its own, to assign liability to an individual for the actions and alleged violations of their subordinate or subagent. Iqbal, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, the plaintiff . . . must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Strikingly, Defendant Reed is not mentioned again at any point after she is named in Paragraph 5 of the Amended Complaint. [ECF No. 8, at 3]. A claim against a defendant that has no allegation against them must be dismissed. See Weller v. Dep't of Soc. Servs. for City of Baltimore, 901 F.2d 398, 397 (4th Cir. 1990). Simply declaring that Defendant Reed "has associates that are her alter ego" does not change this. [ECF No. 20, at 16]. By failing to allege any conduct against Defendant Reed, the undersigned **RECOMMENDS** that all claims against Defendant Reed be **DISMISSED.**

As for Defendant Gee, him being described as "the ultimate supervisor" similarly does not impart direct or vicarious liability. Plaintiff alleges that Defendant Gee dismissed the grievance charge and upheld a violation of Plaintiff's Due Process rights. Plaintiff cannot use the principle of vicarious liability to hold an individual defendant liable in his or her individual capacity for an alleged action of his or her office. Iqbal, 556 U.S. at 676. Defendant contends that Defendant Gee did not participate in any of the decision-making of either the grievance charge or the alleged reprimand letter. Therefore, undersigned **RECOMMENDS** that the violation of Due Process claim against Defendant Gee be **DISMISSED**.

Turning to Defendant Dunaway, her only involvement appears to be her role in upholding the reprimand. Defendant Dunaway merely affirmed the reprimand and upgraded the

"unsatisfactory" teacher rating. [ECF No. 8, at 11]. She did not participate in the reprimand or any actions that Plaintiff's complaint alleges as the basis for his complaint. Therefore, undersigned **RECOMMENDS** that the violation of Due Process claim against Defendant Dunaway be **DISMISSED**.

Lastly, Defendant Scime prepared a letter of availability on Plaintiff's behalf of which Plaintiff alleges failed to mention his success in mentoring PhD graduate students. However, like the above-mentioned individual Defendants, Plaintiff does not allege that Defendant Scime was involved in the selection process for the award. Instead, Plaintiff merely provides that Defendant Scime discriminated and retaliated against [him] by his treatment of Plaintiff's application." [ECF No. 8, at 13]. Therefore, undersigned **RECOMMENDS** that the discrimination and retaliation claim against Defendant Scime be **DISMISSED**.

### 2. ADEA Claim

To state a claim of age discrimination under the ADEA, a plaintiff must allege that "(1) [he] is a member of a protected class; (2) [he] suffered an adverse employment action; (3) [his] job performance was satisfactory; and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination." Swaso v. Onslow Cnty. Bd. of Educ., 698 F. App'x 745, 747 (4th Cir. 2017), *as amended* (Aug. 11, 2017) (internal quotations and citation omitted). Plaintiff has not alleged that each individual Defendant took each adverse action against him nor has Plaintiff alleged facts that justifies the alleged adverse action based on Plaintiff's age.

None of the four actions Plaintiff holds up as a basis for the claim under the ADEA constitute adverse action. Plaintiff's discrimination claim is based on conduct regarding his sabbatical award, the distribution of his teaching load, the letter of reprimand and his performance

evaluation. These actions do not "adversely affect[] the terms, conditions, or benefits of the plaintiff's employment." James v. Booz-Allen & Hamilton, Inc., 368 F.2d 371, 375 (4th Cir. 2004). An adverse action exists if the action "constitutes a significant change in employment status . . . ." Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011).

In the Amended Complaint, Plaintiff does not allege that the handling of his sabbatical award or teaching load had an adverse impact on his employment. Plaintiff was awarded the sabbatical for the period applied and his course load was reduced back to the original size. These events were mere inconveniences, not adverse actions. See Ray v. Int'l Paper Co., 2019 U.S. Dist. LEXIS 177951, at *8 (D.S.C. Oct. 15, 2019) (noting, an action that "causes an employee irritation or inconvenience, but does not affect a term, condition, or benefit of her employment, is not an adverse employment action").

Furthermore, Plaintiff alleges that the letter of reprimand and the unsatisfactory performance evaluation resulted in a loss of merit pay increases. [ECF No. 8, at 11]. Plaintiff has not alleged that an annual merit increase was part of his agreed upon compensation, nor has Plaintiff presented facts indicating such a merit pay increase would be automatic. Neither the receipt of a negative performance evaluation nor the denial of discretionary merit pay increase constitute adverse employment actions. See, e.g., Nyarko v. DaVita Kidney Care, 2023 U.S. Dist. LEXIS 58124, at *25 (D. Md. Mar. 31, 2023) ("The failure to award a discretionary bonus or increase in pay is not an adverse action."); Harris v. Vanguard Grp., Inc., 2015 U.S. Dist. LEXIS 174235, at *10 (W.D.N.C. Nov. 6, 2015) ("[N]either Vanguard's negative assessment of Plaintiff's performance nor its failure to award a discretionary bonus or merit increase rise to the level of adverse employment actions.").

Because Plaintiff has failed to allege any plausible ADEA claim against each individual Defendant, the undersigned **RECOMMENDS** that the ADEA claim with respect to the individual Defendants be **DISMISSED**.

## IV.    CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that the Motion to Dismiss [ECF No. 15] be **GRANTED** as set forth herein, pursuant to Rule 12(b)(6). Therefore, this Court **RECOMMENDS** that that the claim be **DISMISSED**.

Any party shall have fourteen (14) days from the date of service of this Report and Recommendation to file with the Clerk of the Court **specific written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.** A copy of such objections should also be submitted to the presiding United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to timely file written objections to the Report and Recommendation as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is **DIRECTED** to provide a copy of this Order to parties who appear *pro se* by certified mail, return receipt requested, to the last known addresses as shown on the docket, and all counsel of record, as applicable, as provided in the Administrative Procedures for

Electronic Case Filing in the United States District Court for the Northern District of West

Virginia.

Respectfully submitted on July 16, 2024.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE