IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

HARRY GINGOLD,

       Plaintiff,

     v.                                 CIVIL NO. 1:23-CV-91
                                        (KLEEH)

WEST VIRGINIA UNIVERSITY
BOARD OF GOVERNORS,
E. GORDON GEE,
MARYANNE REED,
GREGORY DUNAWAY, and
EARL SCIME,

       Defendants.

MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION IN PART,
REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS

Pending before the Court is a Report and Recommendation ("R&R") by the Magistrate Judge.  The R&R recommends that the Court grant Defendants' motion to dismiss and dismiss Plaintiff's claims with prejudice.  For the reasons discussed herein, the Court **ADOPTS** the R&R **IN PART, REJECTS** it **IN PART,** and **GRANTS** Defendants' motion to dismiss.

## I.   PROCEDURAL HISTORY

On November 13, 2023, the pro se Plaintiff, Harry Gingold ("Plaintiff"), filed a complaint in this action.  He filed an amended complaint one week later.  In it, he alleges that the Defendants, the West Virginia University Board of Governors ("WVUBOG"), West Virginia University President E. Gordon Gee

**MEMORANDUM OPINION AND ORDER ADOPTING**
**REPORT AND RECOMMENDATION IN PART,**
**REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS**

("Gee"), Provost and Vice President for Academic Affairs Maryanne Reed ("Reed"), Dean of the Eberly College of Arts and Sciences Gregory Dunaway ("Dunaway"), and Director of the School of Mathematics and Data Sciences Earl Scime ("Scime") (together, "Defendants") violated his constitutional and statutory rights with respect to his employment at West Virginia University.  On December 20, 2023, Defendants filed a motion to dismiss.  On July 16, 2024, the Magistrate Judge filed an R&R addressing the motion to dismiss.  Plaintiff filed objections to the R&R, and it is now ripe for decision.  Due to the extensive nature of Plaintiff's objections, the Court reviews the R&R de novo.

## II.  <u>STATEMENT OF FACTS</u>

For purposes of analyzing Defendants' motion to dismiss, the Court assumes that the following set of facts, taken from the amended complaint, is true.  Plaintiff is a tenured mathematics professor in the School of Mathematics and Data Sciences at West Virginia University.  Am. Compl., ECF No. 8, at ¶ 15.  He is 78 years old and began his employment with West Virginia University in 1981.  <u>Id.</u> ¶ 16.  Plaintiff's allegations stem from several events that have taken during his employment.

GINGOLD V. WVUBOG ET AL.                                    1:23-CV-91

MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION IN PART,
REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS

### A.   Letter of Reprimand and Performance Evaluation

On July 1, 2021, Scime advised Plaintiff that he decided to place a letter of reprimand in Plaintiff's personnel file.  Id. ¶ 74.  Plaintiff was not given an opportunity to be heard prior to the decision to issue the reprimand, and it is unknown what investigation, if any, was carried out prior to Scime's decision. Id. ¶¶ 77, 92.  Additionally, as part of Plaintiff's 2021 annual performance evaluation dated January 18, 2022, Scime rated Plaintiff's teaching as "unsatisfactory."  Id. ¶ 79.  During the previous 15 years, Plaintiff's teaching had been rated "good" or "excellent."  Id. ¶ 81.

On June 29, 2021,[1] Plaintiff appealed these decisions to Dunaway.  Id. ¶ 85.  Dunaway upheld Scime's reprimand decision but directed Scime to upgrade Plaintiff's teaching evaluation.  Id. ¶¶ 86-87.  On November 11, 2022, Scime upgraded Plaintiff's teaching evaluation to "satisfactory."  Id. ¶ 91.  Plaintiff was not given an opportunity to be heard before Dunaway decided to uphold the decision to reprimand.  Id. ¶ 90.  Plaintiff claims that the placement of the reprimand letter and the teaching evaluation made him "vulnerable to being dismissed for cause,"

---

[1] The Court recognizes that this date, which is included in the amended complaint, is earlier than the date of Scime's letter advising Plaintiff of the forthcoming letter of reprimand.

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION IN PART,
REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS**

made him "vulnerable to sanctions like suspension, demotion and/or pay cut," and made him ineligible for merit pay.  Id. ¶¶ 82-84. He asserts that the evaluation violated WVUBOG's guidelines, rules, and regulations.  Id. ¶¶ 97, 99.

**B.    The Distinguished Professorship Award**

Prior to February 20, 2023, the Eberly College of Arts and Sciences solicitated applications for the Eberly Family Distinguished Professor of Mathematics award (the "Distinguished Professorship Award").  Id. ¶ 20.  The call listed five criteria, including the expectation that the individual "play a key role in graduate student recruitment and training."  Id. ¶¶ 21, 33; Exh. 2 to Am. Compl.  The application required various materials, including a letter of availability from the applicant's unit chair. Am. Compl., ECF No. 8, at ¶ 23; Ex. 2 to Am. Compl.  Plaintiff requested a letter from Scime (his unit chair) and provided him with his qualifications.  Am. Compl., ECF No. 8, at ¶¶ 24, 27. Scime responded as follows:

> Sorry no, I am tied up at my other office until 1.  Rather than beat around the bush, let me get to the point.  For me to write such a letter of support, I would need to understand how you would see yourself becomes a major leader of research in the department and staying in that role for the next five years. A person holding an endowed research chair is ideally going to lead a major research program in the department, train students (which you

### MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION IN PART,
### REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS

> do), mentor younger faculty in research,
> publish high visibility research, seek
> research funding, and really drive research
> forward in the department. It is not, in my
> opinion, a "reward" for a career of excellent
> research. It is instead, a leadership role
> for the next five years. So how do you see
> yourself engaging in that role? Is such a
> role what you are wanting to do?

Exh. 2 to Am. Compl, ECF No. 8-2. Scime demanded additional
qualifications from Plaintiff that were not among the requirements
for the Distinguished Professorship Award. Am. Compl., ECF No. 8,
at ¶ 30. After the Office of the Dean learned of Scime's
communications with Plaintiff, Scime wrote the letter of
availability on behalf of Plaintiff, but he failed to mention
Plaintiff's successful mentoring of graduate students. Id. ¶¶ 31-
32. Plaintiff submitted his application for the Distinguished
Professorship Award on February 20, 2023, but a younger candidate
was ultimately selected. Id. ¶¶ 32-33.[2]

   C.  **Sabbatical Application**

   On April 14, 2023, Plaintiff applied for a sabbatical for the
Spring 2024 semester. Id. ¶ 34. Plaintiff accidentally learned
that WVUBOG did not intend to award him a sabbatical. Id. ¶¶ 38-
39. On May 25, 2023, prior to receiving an official determination,

---

[2] The Court notes that the Amended Complaint includes some
typographical errors: Plaintiff included two paragraphs labeled 32
and two paragraphs labeled 33.

GINGOLD V. WVUBOG ET AL.                                    1:23-CV-91

### MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION IN PART,
### REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS

Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). In it, Plaintiff alleged that he was being discriminated against on the basis of age, in violation of the Age Discrimination in Employment Act ("ADEA"), with respect to his sabbatical application, because a younger faculty member's sabbatical application was approved. Id. ¶¶ 37, 41; Exh. A to Memo. in Support of Mot. to Dismiss, ECF No. 16-1.[3] On July 25, 2023, at the suggestion of the Dean's Office, Plaintiff submitted a modified sabbatical application, and on August 21, 2023, his modified application was approved for the Spring 2024 semester. Am. Compl., ECF No. 8, at ¶¶ 40, 46-47.

### D.   Increased Course Load

On May 3, 2023, Scime notified Plaintiff and two other faculty members that as a part of a response to budget reductions, because the faculty members were not currently dissertation committee chairs for PhD students, their course loads for the Fall 2023

---

[3] Plaintiff's EEOC charge is an authenticated documented that is integral to the allegations in the amended complaint and, therefore, can be considered without converting the motion into one for summary judgment. See Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013) ("A court may . . . consider a written instrument attached as an exhibit to a pleading, as well as documents attached to the motion to dismiss," without converting the motion into one for summary judgment, "so long as they are integral to the complaint and authentic.") (quotation marks and citations omitted).

**MEMORANDUM OPINION AND ORDER ADOPTING**
**REPORT AND RECOMMENDATION IN PART,**
**REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS**

semester would increase from two to three courses. Id. ¶ 48; Exh. 3 to Am. Compl., ECF No. 8-3. Plaintiff had taught two courses per semester for over 42 years. Am. Compl., ECF No. 8, at ¶ 49. On May 14, 2023, based on this information, Plaintiff filed a grievance with the West Virginia Public Employees Grievance Board ("WVPEGB"), alleging discrimination, favoritism, reprisal, and retaliation. Exh. 3 to Am. Compl., ECF No. 8-3. Plaintiff also asserted these claims as part of his charge with the EEOC (filed on May 25, 2023), alleging that the increased course load was a result of age discrimination in violation of the ADEA. Exh. A to Memo. in Supp. of Mot. to Dismiss, ECF No. 16-1.

On June 5, 2023, a conference was conducted among the parties to the WVPEGB grievance, and Plaintiff informed the grievance administrator that he was scheduled to advise a PhD student during the Fall semester. Exh. 5 to Am. Compl., ECF No. 8-5. The parties held the grievance in abeyance to allow WVUBOG to investigate Plaintiff's representation. Id. WVUBOG subsequently advised the grievance administrator and Plaintiff that it confirmed Plaintiff's representation. Id. Accordingly, WVUBOG agreed to return Plaintiff's teaching assignment to two classes for the semester, and on July 21, 2023, the grievance was dismissed. Id.; Am. Compl., ECF No. 8, at ¶ 56.

**GINGOLD V. WVUBOG ET AL.**                                    **1:23-CV-91**

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION IN PART,
REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS**

Plaintiff also generally alleges that in the past "several years," the Mathematics Department and/or the School of Mathematics and Data Sciences made several tenure track faculty appointments for positions with 40% teaching, 40% research, and 20% service, and younger faculty "exclusively" were given preference over older candidates who were "exceptionally qualified[.]" Am. Compl., ECF No. 8, at ¶¶ 104, 105. On October 4, 2023, the EEOC issued a Right to Sue notice. Id. ¶ 103.

Based on these allegations, Plaintiff asserts various claims against Defendants for (1) age discrimination in violation of the ADEA; (2) retaliation in violation of the ADEA, Title VI, and/or Title VII of the Civil Rights Act; (3) violations of due process under 42 U.S.C. § 1983; (4) breach of contract and/or breach of the implied covenant of good faith and fair dealing; and (5) hostile work environment. Plaintiff's claims are brought against the individual defendants in their official and individual capacities.

### III. STANDARD OF REVIEW

**Rule 12(b)(1)**

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows the Court to dismiss an action for lack of jurisdiction over the subject matter. A plaintiff bears "the burden of proving that

**MEMORANDUM OPINION AND ORDER ADOPTING**
**REPORT AND RECOMMENDATION IN PART,**
**REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS**

subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).  In considering a motion to dismiss pursuant to Rule 12(b)(1), the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. (citation omitted).  The court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (citation omitted).  When a defendant asserts multiple defenses, "questions of subject matter jurisdiction must be decided first, because they concern the court's very power to hear the case." Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (citations and quotation marks omitted).

### Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted."  In ruling on a 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).  A court is

### MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION IN PART,
### REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS

"not bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 942, 952 (4th Cir. 1992). Dismissal is appropriate only if "it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim." <u>Johnson v. Mueller</u>, 415 F.2d 354, 355 (4th Cir. 1969).

### IV.  <u>DISCUSSION</u>

For the reasons discussed below, Defendants are entitled to sovereign immunity in their official capacities, with respect to all claims except those under Title VII. Regardless, all of Plaintiff's claims fail under Rule 12(b)(6).

GINGOLD V. WVUBOG ET AL.                                    1:23-CV-91

## MEMORANDUM OPINION AND ORDER ADOPTING
## REPORT AND RECOMMENDATION IN PART,
## REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS

> **A.    With the exception of claims under Title VII, Defendants are entitled to sovereign immunity in their official capacities.**

The Eleventh Amendment to the United States Constitution provides, in pertinent part, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State[.]"  "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal Court." Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Generally, this Court, and others, have held that WVUBOG is immune from suit under the Eleventh Amendment.  See W. Va. Univ. Bd. of Governors ex rel. W. Va. Univ. v. Rodriguez, 543 F. Supp. 2d 526, 535 (N.D.W. Va. 2008) ("West Virginia University and its Board of Governors are arms and alter egos of the State of West Virginia."); Al-Asbahi v. W. Va. Univ. Bd. of Governors, No. 1:15CV144, 2017 WL 402983, at *10 (N.D.W. Va. Jan. 30, 2017), aff'd, 724 F. App'x 266 (4th Cir. 2018).  Eleventh Amendment immunity also "applies to . . . state employees acting in their official capacity." Harter v. Vernon, 101 F.3d 334, 337 (4th Cir. 1996) (citation omitted).  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION IN PART,
REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS**

official's office. . . . As such, it is no different from a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citations omitted).

There are three exceptions to sovereign immunity. See Lee-Thomas v. Prince George's Cnty. Pub. Sch., 666 F.3d 244, 248-49 (4th Cir. 2012). First, the State may waive its right to immunity and consent to suit. Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 618 (2002). Obviously, the State of West Virginia did not waive its right to immunity in one of the federal statutes at play, nor did it waive its right to immunity with respect to any breach of contract or hostile work environment claim. Second, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001) (quotation marks and citation omitted). This will be discussed below. Third, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004) (citation omitted). Plaintiff seeks no prospective injunctive relief here.

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION IN PART,
REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS**

While the ADEA, Title VI, and 42 U.S.C. § 1983 provide for federal causes of action, they do not abrogate the Eleventh Amendment.  See Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 91 (2000) (ADEA does not validly abrogate); Gomez v. Illinois State Bd. of Educ., 811 F.2d 1030, 1038 (7th Cir. 1987) (Title VI does not abrogate); Quern v. Jordan, 440 U.S. 332, 332 (1979) (42 U.S.C. § 1983 does not abrogate).  The Supreme Court has held, however, that Congress properly abrogated the states' Eleventh Amendment immunity for suits under Title VII.  See Stewart, Jr. v. Va. Com. Univ., 414 F. App'x 555, 556 (4th Cir. 2011) (unpublished) (citing Fitzpatrick v. Bitzer, 427 U.S. 445, 446–57 (1976)).

Defendants are entitled to Eleventh Amendment immunity in their official capacities with respect to claims under the ADEA, Title VI, and 42 U.S.C. § 1983, along with claims for breach of contract or breach of the implied covenant of good faith and fair dealing and hostile work environment under the ADEA.  The motion to dismiss is **GRANTED** in this respect, and those claims are **DISMISSED** against Defendants to the extent that they are asserted against them in their official capacities.[4]

---

[4] Plaintiff contends that Defendants are not immune because he seeks recovery limited to the State's liability insurance.  See Pittsburgh Elevator Co. v. W. Va. Bd. of Regents, 172 W. Va. 743, 310 S.E.2d 675 (1983).  Defendants are correct that Pittsburgh Elevator speaks only to immunity granted by the West Virginia

**MEMORANDUM OPINION AND ORDER ADOPTING**
**REPORT AND RECOMMENDATION IN PART,**
**REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS**

**B.   Regardless of whether any immunity applies, Plaintiff has failed to state a single claim, and all claims fail as a matter of law.**

As discussed below, Plaintiff has failed to plead sufficient facts to state any claims to relief that are plausible on their face.  Accordingly, they fail as a matter of law.

**1.   Title VI and Title VII**

Title VI does not provide any protections against age discrimination.  Rather, Title VI governs "race, color, or national origin" discrimination and retaliation claims in connection with denial of benefits under federally assisted programs.  See 42 U.S.C. § 2000d.   Similarly, Title VII does not provide any protections against age discrimination.  See Faulconer v. Centra Health, Inc., 808 F. App'x 148, 150-51 (4th Cir. 2020).  Rather, "Title VII prohibits employment discrimination based on race, color, religion, sex, or national origin."  Id. (citing 42 U.S.C. §§ 2000e-2, 2000e-3).  Plaintiff has asserted no facts in the amended complaint indicating that he was discriminated against on the basis of his race, color, national origin, religion, or sex. He raises claims of age discrimination.  Accordingly, to the extent

---

Constitution, not the sovereign immunity set forth in the Eleventh Amendment to the United States Constitution.  See Wriston v. W. Va. Dep't of Health and Human Res., No. 2:20-CV-00614, 2021 WL 4150709, at *7 (S.D.W. Va. Sept. 13, 2021).

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION IN PART,
REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS**

that he asserts that Defendants violated Title VI or Title VII, those claims are **DISMISSED**.

### 2.   Defendant Maryanne Reed

Reed is identified by title in Paragraph 5 of the amended complaint but never mentioned again.  Because the amended complaint fails to allege any conduct whatsoever by Reed, the claims against her must be, and hereby are, **DISMISSED**.  See <u>Weller v. Dep't of Soc. Servs. for City of Baltimore</u>, 901 F.2d 387, 397-99 (4th Cir. 1990) (affirming dismissal as to certain defendants because there were no allegations against them).

### 3.   ADEA

Certain of Plaintiff's theories of liability under the ADEA fail because he did not exhaust his administrative remedies. Further, Plaintiff has failed to state a claim of discrimination under the ADEA because he has failed to plead that the younger candidate was similarly (or less) qualified than he was.  Finally, he has failed to state a claim of retaliation under the ADEA because he has not identified any causal link between a protected activity and a retaliatory action.

### a.   Discrimination

The ADEA provides that it is unlawful for "an employer . . . to discharge any individual or otherwise

GINGOLD V. WVUBOG ET AL.                                1:23-CV-91

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION IN PART,
REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS**

discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a). Without direct evidence of intentional discrimination, courts analyze ADEA claims under the McDonnell Douglas burden-shifting framework established for Title VII claims. See Darnell v. Tyson Foods, Inc., 536 F. App'x 366, 369 (4th Cir. 2013). A plaintiff must first establish a prima facie case of age discrimination:

> [A plaintiff] must demonstrate that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by a similarly qualified applicant outside the protected class. Hill, 354 F.3d at 285.

Id. "It is well settled that before filing suit under . . . the ADEA, a plaintiff must exhaust [his] administrative remedies by bringing a charge with the EEOC." Walton v. Harker, 33 F.4th 165, 172 (4th Cir. 2022) (citation omitted). "The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint." Id. (citation omitted).

Here, Plaintiff's EEOC charge complains of (1) the increased course load and (2) the initial denial of his sabbatical

16

GINGOLD V. WVUBOG ET AL.                                    1:23-CV-91

**MEMORANDUM OPINION AND ORDER ADOPTING**
**REPORT AND RECOMMENDATION IN PART,**
**REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS**

application.   In  the  amended  complaint,  Plaintiff  cites  the
following  actions  that  could,  hypothetically,  be  construed  as
adverse  employment  actions:  (1)  the  placement  of  the  reprimand
letter  in  his  file,  (2)  the  increased  course  load,  (3)  the  initial
denial  of  his  sabbatical  request,  and  (4)  not  being  awarded  the
Distinguished  Professorship  Award.   Because  Plaintiff  did  not
exhaust  his  administrative  remedies  with  respect  to  the  reprimand
letter  or  the  Distinguished  Professorship  Award,  those  allegations
cannot  form  the  basis  of  a  discrimination  claim.[5]

Even   if   the   reprimand   letter   or   the   Distinguished
Professorship  Award  could  be  considered,  for  all  four  of  these
potentially  adverse  employment  actions,  Plaintiff  has  failed  to
satisfy  the  fourth  element  of  his  _prima_ _facie_  case:  that  the
position  was  filled  or  opportunity  was  given  to  a  similarly
qualified  applicant  outside  the  protected  class.   While  Plaintiff
alleges  that  a  younger  candidate  was  selected  for  the  Distinguished
Professorship  Award,  he  has  not  asserted  any  other  information
about  that  candidate.   To  the  extent  that  Plaintiff  mentions
younger  faculty  receiving  opportunities  he  did  not,  he  has  failed

---

[5] The  Court  also  finds  that  these  events  are  not  "reasonably
related"  to  the  facts  asserted  in  the  EEOC  charge  and  would  not  be
"developed  by  reasonable  investigation  of  the  original
complaint[.]"  See Walton, 33 F.4th at 172.

**MEMORANDUM OPINION AND ORDER ADOPTING**
**REPORT AND RECOMMENDATION IN PART,**
**REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS**

to plead that the younger candidates were similarly (or less) qualified than he was.  He has not sufficiently pled that Defendants engaged in age discrimination under the ADEA, and any such claims are **DISMISSED** for this reason.

### b.   Retaliation

"An employer violates the ADEA by retaliating against an employee for engaging in a protected activity."  Johnson v. Mechanics & Farmers Bank, 309 F. App'x 675, 684 (4th Cir. 2009) (unpublished) (citing 29 U.S.C. § 623(d) (2000)).  A plaintiff must satisfy the following elements to establish a prima facie case of retaliation under the ADEA: "(1) the plaintiff engaged in a protected activity; (2) the employer took an adverse employment action against the plaintiff, and (3) a causal connection existed between the protected activity and the adverse employment action." Id. (citing Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989)).

Here, Plaintiff has not pled facts that satisfy the third element: a causal connection.  The alleged retaliatory actions taken by Defendants were (1) the denial of Plaintiff's requested sabbatical, and (2) Plaintiff's increased course load.  After reviewing the amended complaint, the Court discerns that the only potential protected activities that Plaintiff engaged in were (1)

GINGOLD V. WVUBOG ET AL.                                1:23-CV-91

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION IN PART,
REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS**

his filing of the WVPEGB grievance on May 14, 2023, and (2) his filing of the EEOC charge on May 25, 2023. Plaintiff has failed to sufficiently allege a link between the protected activities and any alleged retaliation.

When Plaintiff filed his EEOC claim (after unofficially learning that WVUBOG had no intention to allow him to take a sabbatical), Plaintiff was permitted to submit a modified sabbatical application. Nothing about Defendants' actions was retaliatory with respect to the initial sabbatical application sabbatical. To the contrary, it was conciliatory. Further, the decision to increase Plaintiff's course load was made before Plaintiff filed his grievance and before Plaintiff filed his EEOC charge. To the extent that Plaintiff asserts that one or more of these actions, which took place in 2023, was in retaliation for Plaintiff's dispute of the 2021 reprimand letter, there is nothing in the record indicating that the instances were related. Overall, Plaintiff has not identified any causal link between a protected activity and a retaliatory action. Accordingly, he has not sufficiently pled that Defendants engaged in retaliation under the ADEA, and any such claims are **DISMISSED** for this reason.

GINGOLD V. WVUBOG ET AL.                                    1:23-CV-91

### MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION IN PART,
### REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS

**4.   Violations of Due Process Under 42 U.S.C. § 1983**

First, a section 1983 cannot be asserted against WVUBOG. See Will, 491 U.S. at 71 ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."). Accordingly, the section 1983 claim is **DISMISSED** against WVUBOG. Second, the amended complaint contains no allegations regarding Gee or Dunaway in connection with Plaintiff's due process violation claim under section 1983.  The amended complaint appears to allege that Plaintiff was denied due process when the letter of reprimand was placed in his personnel file, which resulted in his ineligibility for a merit pay increase.  There are no allegations, however, that Gee or Dunaway personally issued or had any involvement in the reprimand decision.  At best, the amended complaint alleges that Dunaway and Gee upheld the decision. Plaintiff, however, cannot use vicarious liability to hold an individual defendant liable in his or her individual capacity for the alleged actions of his or her office.  See Iqbal, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Accordingly, the section 1983 claim is **DISMISSED** against Gee and Dunaway.

**MEMORANDUM OPINION AND ORDER ADOPTING**
**REPORT AND RECOMMENDATION IN PART,**
**REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS**

The Court must analyze whether a section 1983 claim has been sufficiently pled against Scime.  Scime purportedly violated Plaintiff's due process rights by issuing the letter of reprimand. Plaintiff asserts that the letter of reprimand made him vulnerable to being "dismissed for cause."  Am. Compl., ECF No. 8, at ¶ 82. He also alleges that it made him vulnerable to sanctions like suspension, demotion, and/or pay cuts, and that it made him ineligible for merit pay.  Id. ¶¶ 83, 84.

Plaintiff relies on the WVPEGB's decision in Sam Nadler, Jr. v. West Virginia University, No. 05-HE-455, 2006 WL 1976851 (June 22, 2006), to argue that Scime has violated his constitutional right to due process.  In Nadler, the Education and State Employees Grievance Board found that an employee must be given notice and opportunity to be heard prior to imposition of discipline (which includes the placement of a reprimand in an employee's personnel file).  Id. at *3.  Here, Plaintiff has failed to plead that he was denied the requisite opportunity to be heard.  On July 1, 2021, Scime notified Plaintiff of his decision to place the letter of reprimand in his file.  Am. Compl., ECF No. 8, at ¶ 74.  This afforded Plaintiff the opportunity to file a grievance before the letter was actually placed in his file.  At all relevant times, the public employee grievance procedure was available to him.  See

21

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION IN PART,
REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS**

W. Va. Code §§ 6C-2-1, et seq.[6]  Plaintiff also pleads that he appealed Scime's decisions to Dunaway.  See Am. Compl., ECF No. 8, at ¶ 85.

To the extent that Plaintiff asserts that he has been deprived of his property, he does not identify any employment contract or other statutory rule or regulation entitling him to merit pay. Courts have recognized that where merit pay is based on meeting certain criteria or contingencies, it is not a concrete property interest actionable under the Due Process Clause.  See Veit v. Heckler, 746 F.2d 508, 511 (9th Cir. 1984) (holding that an employee had no property interest under a merit pay statute that did not "create[] any expectation or entitlement to either a merit pay increase or to notice that an employee will receive a relatively low performance rating"); Swartz v. Scruton, 964 F.2d 607, 610 (7th Cir. 1992)  (holding that a professor does not have a property interest under the Due Process Clause in merit pay where that pay is subject to conditions outside of his control). Accordingly, Plaintiff has also failed to state a claim under section 1983 against Scime for violation of his due process rights.

---

[6] Under the statute, an aggrieved public employee can challenge an adverse employment action and seek relief.  See W. Va. Code § 6C-2-3.

GINGOLD V. WVUBOG ET AL.                                    1:23-CV-91

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION IN PART,
REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS**

> **a.  Even  if  Defendants  technically  committed  a
> constitutional  violation,  they  are  entitled  to
> qualified  immunity  in  their  individual
> capacities.**

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 230 (2009) (quotation marks and citation omitted). It "may be invoked by a government official sued in his personal, or individual, capacity." Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006).  In order to be entitled to qualified immunity, a defendant must either show (1) that no constitutional or statutory violation occurred, or (2) that the right violated was not clearly established at the time it was violated.  Hunter v. Town of Mocksville, 789 F.3d 389, 396 (4th Cir. 2015).  A court may consider either prong first.  Pearson, 555 U.S. at 236.  "For a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." Safar v. Tingle, 859 F.3d 241, 246 (4th Cir. 2017) (quotation marks and citation omitted).

As discussed above, Plaintiff has not sufficiently pled that Defendants denied him the opportunity to appeal the decision to place the reprimand letter in his file.  Nor has he demonstrated

**GINGOLD V. WVUBOG ET AL.**                                          **1:23-CV-91**

## MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION IN PART,
### REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS

a property interest beyond an abstract need or desire for it.  For the same reasons that the Court found that Plaintiff has not stated a section 1983 claim against Scime and the other individual defendants, the Court finds that it was not clearly established at the time of their actions that they were in violation of the Fourteenth Amendment.  Plaintiff has not shown that "existing precedent . . . [has] placed the . . . constitutional question beyond debate."  See Safar, 859 F.3d at 246.  Accordingly, to the extent that Plaintiff asserts a section 1983 claim against Defendants in their individual capacities, they are entitled to qualified immunity, and the claims against them are **DISMISSED**.

> **5.   Breach of Contract and/or Breach of the Implied
> Covenant of Good Faith and Fair Dealing**

"In West Virginia, the elements of breach of contract are (1) a contract exists between the parties; (2) a defendant failed to comply with a term in the contract; and (3) damage arose from the breach."  Nance v. Huntington W. Va. Hous. Auth., No. 16-0855, 2017 WL 2210152, at *5 (W. Va. May 19, 2017) (citation omitted). West Virginia does not recognize a standalone legal claim for breach of the implied covenant of good faith and fair dealing. See Hanlon v. AXA Equitable Life Ins. Co., No. 15-0337, 2016 WL 2968990, at *3 (W. Va. May 20, 2016).

GINGOLD V. WVUBOG ET AL.                                    1:23-CV-91

### MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION IN PART,
### REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS

Here, Plaintiff has failed to plead that a contract exists. While he alleges that he is a contract employee, he does not identify a contract in the amended complaint or how it was breached. Accordingly, his claims for breach of contract and breach of the implied covenant of good faith and fair dealing fail as a matter of law. Even if Plaintiff had identified a contract and how it was breached, his contract with one or more of the defendants would be a contract with them in their official capacities. As discussed above, all official capacity claims have been dismissed. Accordingly, Plaintiff's breach of contract claim fails. Defendants' motion to dismiss is **GRANTED** in this respect, and Plaintiff's claims of breach of contract and breach of the implied covenant of good faith and fair dealing are **DISMISSED**.

### 6.  Hostile Work Environment

Under the ADEA, a plaintiff must exhaust administrative remedies before the EEOC before filing a hostile work environment claim in district court. See Chacko v. Patuxent Inst., 429 F.3d 505, 511, 513 (4th Cir. 2005). Here, Plaintiff's EEOC charge did not include a claim for hostile work environment. Accordingly, the claim must be dismissed. See Parker v. Reema Consulting Servs., Inc., 915 F.3d 297, 306 (4th Cir. 2019) ("[W]hen the claims in [the] court complaint are broader than the allegation of a

25

**MEMORANDUM OPINION AND ORDER ADOPTING**
**REPORT AND RECOMMENDATION IN PART,**
**REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS**

discrete act or acts in [the] administrative charge, they are procedurally barred.") (quotation marks and citation omitted)).

Even if Plaintiff had exhausted his administrative remedies with respect to his hostile work environment claim, he has failed to state a claim.  "[A] hostile [work] environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[7]  Dufau v. Price, 703 F. App'x 164, 166-67 (4th Cir. 2017) (citation omitted).  "Among the factors a court should consider are the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Id. (quotation marks and citation omitted).  Here, Plaintiff has failed to identify any conduct by Defendants that would constitute "severe or pervasive." He has, therefore, failed to state a hostile work environment claim.  Defendants' motion to dismiss is **GRANTED** with respect to his hostile work environment claim, and it is **DISMISSED.**

---

[7] Defendants' motion and the R&R discuss hostile work environment claims in the context of Title VII, but hostile work environment claims may also be asserted in the context of the ADEA.

GINGOLD V. WVUBOG ET AL.                                          1:23-CV-91

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION IN PART,
REJECTING IT IN PART, AND GRANTING MOTION TO DISMISS**

### 7.   Interference with EEOC Investigation

To the extent that Plaintiff alleges that Defendants interfered with the EEOC investigation, the Court **DENIES** those allegations as moot because the EEOC ultimately issued Plaintiff a Right to Sue.

### V.   CONCLUSION

For the reasons discussed, with respect to the R&R [ECF No. 44], the Court **ADOPTS** it **IN PART**, to the extent that it is consistent with this Memorandum Opinion and Order, and **REJECTS** it **IN PART**, to the extent that it is not.  Defendants' motion to dismiss is **GRANTED** [ECF No. 15].  This action is **DISMISSED** and **STRICKEN** from the Court's active docket.

It is so **ORDERED.**

The Clerk is **DIRECTED** to transmit copies of this Memorandum Opinion and Order to counsel of record by email and to the pro se Plaintiff by certified mail, return receipt requested.

DATED: September 20, 2024

_Tom S Kleeh_
_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA